David H. Fry (*pro hac vice*)
Erin J. Cox (*pro hac vice*)
Eric P. Tuttle (*pro hac vice*)
**MUNGER, TOLLES & OLSON LLP**
355 South Grand Avenue, 35th Floor
Los Angeles, California  90071
   Telephone:  (213) 683-9100

James S. Jardine (1647)
Elaina M. Maragakis (7929)
Michael D. Mayfield (8237)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah  84145-0385
   Telephone:  (801) 532-1500

*Attorneys for Defendants Wells Fargo Bank, N.A.*
*and Wells Fargo & Co.*

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| Lawrence J. Mitchell, Kay Mitchell, Matthew C. Bishop, Tracy Kilgore, Jennifer K. Zeleny, Joseph W. Steele V, Scott Westin, Bruce Bird, Nathan Ornellas, Anu Sood, Brent Miller, Nicholas Beach, Alex Inskeep, Loretta Grady, Richard Fountain, Matthew Gragg, Akoya Lawani, Sharon Williams, Ken Gregory, Sbeen Ajmal, David Self, Edward Dowdy, April Thomas, Don Black, Reza Kamali, Anthony Baquero, Carina Rhea, Shanell Golden, Kim Weston, Adam Brandt, Jacci Brandt, Jennifer King, Ralph McCoy, Aaron Hands, Ayana Smith, Lisa Stern, Mbegane Diouf, Doug Waters, Candyce Ravenell, Paul Fos, Patricia Burkhalter, Blake Knight, Cameron Casey, Jeffery Taylor, Robert Moyer, Marcia Cameron, Gloria Pledger, Charles Jones, Aaron Brodie, Dominique Evans, Richard Farr, Kevin Saliva, Harold Beard, Travis Ashby, Andrew Gorayeb, Scott Mugrage, Edwin Zorilla, Curtis Dowdle, Edward Klann, Steven Stetzel, Glenn Gilleshammer, Wenoka Thompson, Maryann Aldous, Jennifer Porter, Robin Quigg, Tamar Hodges, Barbara Shadoan, Austin Law, Jennifer Ellsworth, Michelle Sterling, Denise Poe, Jamal Dean, Brandon Westman, Concepcion Powell, Adrian Thompson, Eric Talaska, Zachary | **REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION PURSUANT TO FAA §§ 3-4**<br><br>Case No.  2:16-cv-00966<br>Judge Clark Waddoups |

| | |
|---|---|
| Christensen, Erica Jones, Stephen Hope, Nedelka Martinsen *et al* and unknown Plaintiffs 1-1,000,000,<br><br>            Plaintiffs,<br>    v.<br><br>Wells Fargo Bank, National Association, a National Banking Association, and Wells Fargo & Company, a Delaware Corporation, and Does 1-5,300,<br><br>            Defendants. | |

Defendants Wells Fargo Bank, N.A. and Wells Fargo & Company (collectively, "Wells Fargo") hereby submit this Reply in Support of their Motion to Compel Arbitration Pursuant to FAA Sections 3-4.

i

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

ARGUMENT .........................................................................................................................4

    A.    Plaintiffs Agreed To Have An Arbitrator Decide the Gateway Questions Concerning Arbitrability. ......................................................................................4

        1.    Incorporation of the AAA Rules Clearly and Unmistakably Delegates the Arbitrability Issue. ..............................................................5

        2.    The Language of the Arbitration Clauses Unambiguously Delegates the Arbitrability Issue to the Arbitrator. ....................................6

    B.    Plaintiffs Agreed To Arbitrate This Dispute. ...........................................................7

    C.    Plaintiffs' Arbitration Agreements Are Not Unconscionable or Illegal, Nor Does Plaintiffs' Subjective Misinterpretation of the Scope of Arbitration Provide Grounds to Rescind. ..................................................................................11

    D.    Arbitration Does Not Effect a Waiver of Plaintiffs' Federal Statutory Rights. .....................................................................................................................13

## TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Am. Express Co. v. Italian Colors Rest.*,
 133 S. Ct. 2304 (2013)............................................................................................13, 14, 15

*Armijo v. Prudential Ins. Co. of Am.*,
 72 F.3d 793 (10th Cir. 1995) .........................................................................................3, 7, 9

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
 475 U.S. 643 (1986)................................................................................................................5

*Belnap v. Iasis Healthcare*,
 844 F.3d 1272 (10th Cir. 2017) ........................................................................................2, 4, 5

*Deputy v. Lehman Bros.*,
 345 F.3d 494 (7th Cir. 2003) .................................................................................................15

*Getzelman v. Trustwave Holdings, Inc.*,
 2014 WL 3809736 (D. Colo. Aug. 1, 2014) ............................................................................5

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
 561 U.S. 287 (2010)................................................................................................................7

*Green Tree Fin. Corp.-Ala. v. Randolph*,
 532 U.S. 79 (2000)..........................................................................................................13, 14

*Grynberg v. BP P.L.C.*,
 585 F. Supp. 2d 50 (D.D.C. 2008) .........................................................................................10

*Jabbari v. Wells Fargo & Co.*,
 Case No. 3:15-cv-02159-VC, ECF No. 69 (N.D. Cal. Sept. 23, 2015) ............................2, 3, 9

*Livingston v. Assocs. Fin., Inc.*,
 339 F.3d 553 (7th Cir. 2003) .................................................................................................14

*Local 5–857 Paper, Allied–Indus., Chem. & Energy Workers Int'l Union v.
 Conoco, Inc.*,
 320 F.3d 1123 (10th Cir. 2003) ...............................................................................................8

*Mohebbi v. Khazen*,
 2014 WL 6845477 (N.D. Cal. Dec. 14, 2014) ......................................................................10

## TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Monex Deposit Co. v. Gilliam*,
   671 F. Supp. 2d 1137 (C.D. Cal. 2009) ...................................................................................12

*Montgomery v. Applied Bank*,
   848 F. Supp. 2d 609 (S.D.W. Va. 2012) ..................................................................................12

*Peabody Holding Co. v. United Mine Workers of Am., Int'l Union*,
   665 F.3d 96 (4th Cir. 2012) ........................................................................................................4

*Pickens v. ITT Educ. Servs., Inc.*,
   2012 WL 5198332 (S.D. Tex. Oct. 19, 2012) ..........................................................................10

*Rent-A-Ctr., W., Inc. v. Jackson*,
   561 U.S. 63 (2010) .....................................................................................................................4

*Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985) ............................................................................................................9, 10

*Sanchez v. Nitro-Lift Techs., L.L.C.*,
   762 F.3d 1139 (10th Cir. 2014) .................................................................................................8

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
   363 U.S. 574 (1960) ...................................................................................................................7

*VRG Linhas Aereas S.A. v. MatlinPatterson Glob. Opportunities Partners II L.P.*,
   717 F.3d 322 (2d Cir. 2013) .......................................................................................................4

**STATE CASES**

*Hedging Concepts, Inc. v. First Alliance Mortg. Co.*,
   41 Cal. App. 4th 1410 (1996) ..................................................................................................13

*John Call Eng'g, Inc. v. Manti City Corp.*,
   743 P.2d 1205 (Utah 1987) ......................................................................................................13

*Peterson v. Sunrider Corp.*,
   48 P.3d 918 (Utah 2002) ..........................................................................................................12

*Ryan v. Dan's Food Stores, Inc.*,
   972 P.2d 395 (Utah 1998) ........................................................................................................11

**INTRODUCTION**

Plaintiffs "admit that there were contracts between Wells Fargo and [Class] Members," concede that "[t]he contract, as a whole, was [a] valid and enforceable agreement," (Opposition ("Opp.") at 3), and explain that "Class members intended to agree to arbitrate things generally associated with bank accounts: things such as account balances, ATM fees, overdraft fees, or simply put- disputes that a consumer would expect to be associated with a bank account." (Opp. at 11.) Plaintiffs nevertheless insist they are not obliged to arbitrate their claims against Wells Fargo. They are mistaken.[1]

Plaintiffs argue that the arbitration clause is unenforceable as to the claims asserted in this case: either the claims fall outside the scope of arbitrable disputes or, if the arbitration clause were to apply, then either the agreement to arbitrate is rendered unconscionable or Plaintiffs' subjective misunderstanding as to its scope would allow them to avoid arbitration. As an initial

---

[1] In their statement of facts, Plaintiffs raised objections as to the evidence Wells Fargo submitted with respect to only 14 of the 58 named plaintiffs whom Wells Fargo moved to compel. (*See* Opp. at viii – xv.)  For each of these 14 individuals, Plaintiffs contended that certain exhibits introduced through the Declaration of Karen Nelson in support of Wells Fargo's motion were not attached to the declaration. However, each and every exhibit identified by Plaintiffs as missing from the declaration was publicly filed on the Court's docket and has been accessible to all members of the public since November 23, 2016. (*See* ECF No. 27-18  (Ex. 5-C); ECF No. 27-19 (Ex. 10-B); ECF No. 27-20 (Ex. 14-B); ECF No. 27-21 (Ex. 17-B); ECF No. 27-22  (Ex. 34-B); ECF No. 27-23 (Ex. 34-C); ECF No. 27-24 (Ex. 37-A); ECF No. 27-25  (Ex. 37-E ); ECF No. 27- 26 (Ex. 41-B); ECF No. 27-27 (Ex. 43-B); ECF No. 27-28 (Ex. 43-C); ECF No. 27-29 (Ex. 44-B); ECF No. 27-30 (Ex. 44-D); ECF No. 27-31 (Ex. 45-B); ECF No. 27-32 (Ex. 47-E); ECF No. 27-33 (Ex. 47-F); ECF No. 27-34 (Ex. 47-H); ECF No. 27-35  (Ex. 54-B); ECF No. 27-36 (Ex. 55-B); ECF No. 27-37 (Ex. 55-E).)  Plaintiffs also contend that "there is no application for Erica Bendixsen," (Opp. at x), a puzzling assertion given that it immediately follows Plaintiffs' quotation from the relevant paragraph of the Nelson Declaration explaining that Ms. Bendixsen signed a Consumer Account Application for Relationship, Name or Title Change (under seal, attached as Ex. 29-A) and in doing so became a joint owner to a pre-existing account. Any of Plaintiffs' evidentiary objections are moot, however, as they have now confirmed that all Class Members entered into enforceable agreements with Wells Fargo which contained arbitration clauses.

matter, the agreements that Plaintiffs concede are binding on them "clearly and manifestly" vest *the arbitrator* with the power to determine whether the arbitration agreements govern a particular dispute, and also whether they are enforceable.  The agreements say this expressly in unambiguous terms and incorporate the AAA rules, which likewise delegate gateway questions concerning arbitrability to the arbitrator.  As the Tenth Circuit recently observed, "all of our sister circuits to address the issue have unanimously concluded that incorporation of the . . . AAA Rules constitutes clear and unmistakable evidence of an agreement to arbitrate arbitrability"—a conclusion which the Tenth Circuit joined in addressing the effect of incorporating substantively identical JAMS arbitration rules.  *Belnap v. Iasis Healthcare*, 844 F.3d 1272 (10th Cir. 2017).  And as noted in Wells Fargo's motion, Judge Chhabria in the Northern District of California has already considered identical or nearly identical language from some of the very same account agreements in the context of a class action brought by Wells Fargo customers who allegedly had unauthorized accounts opened in their names.  *See Jabbari v. Wells Fargo & Co.*, Case No. 3:15-cv-02159-VC, ECF No. 69 at 1 (N.D. Cal. Sept. 23, 2015) (order granting Wells Fargo's motions to compel arbitration of named plaintiffs' claims, attached at ECF No. 24-1 in this case) (hereinafter "*Jabbari*").  Judge Chhabria held that "[t]hese provisions clearly assign arbitrability determinations to the arbitrator," and the agreements did not "contain other language that would create doubt about whether the parties intended to delegate the arbitrability determination." *Id.*[2]  Accordingly, there is nothing more for the Court to decide—Plaintiffs must be ordered to arbitration.

---

[2] Plaintiffs make the peculiar argument that, because the parties in the *Jabbari* action stipulated to dismiss an appeal in order to allow Judge Chhabria to rule on a class action settlement, his prior order compelling arbitration "would be *obiter dictum* and not controlling or persuasive in

2

Even if Plaintiffs' challenges to the reach and enforceability of the agreements were properly before the Court, they would fail. Plaintiffs strain against the broad language of the arbitration clause in arguing that there is an ambiguity whether the clause's express applicability to "any" dispute really means only certain disputes "generally associated with bank accounts" (Opp. at 11) that are not premised on illegal conduct. Given the strong presumption in favor of arbitrability, especially in cases of broadly worded arbitration clauses, Plaintiffs' contention that there is an ambiguity "resolve[s] the issue, because all ambiguities must be resolved *in favor* of arbitrability." *Armijo v. Prudential Ins. Co. of Am.,* 72 F.3d 793, 798 (10th Cir. 1995) (emphasis in original). Nor can it be said that the disputes in this case are divorced from Plaintiffs' admittedly authorized accounts, since the core of their claims consist of allegations that Wells Fargo wrongfully took money from their authorized accounts in order to pay fees incurred in the allegedly unauthorized accounts, and misappropriated information gleaned from their authorized accounts to open unauthorized ones.

Although Plaintiffs concede that the arbitration agreements would be enforceable as to *some* disputes, Plaintiffs assert that if the arbitration agreements cover *this* dispute then they are unconscionable. That argument is nonsensical. By conceding that the arbitration agreements are enforceable in some contexts, Plaintiffs necessarily admit that there was no procedural unconscionability in their procurement. That disposes of any unconscionability argument. Moreover, Courts regularly enforce broad arbitration agreements, including those that support

---

this matter." (Opp. at 9.) To the contrary, Judge Chhabria's order compelling arbitration remains the law of the case in the *Jabbari* action, and given that this highly skilled federal jurist examined the same agreements now before this Court, Wells Fargo submits that his opinion compelling arbitration in the face of allegations of unauthorized accounts should be considered persuasive authority in this matter.

the arbitration of claims ranging from bribery to assault and battery. Plaintiffs cite no case in which an arbitration clause was found to be unconscionable because of the range of disputes that it encompassed. Similarly, Plaintiffs' subjective misinterpretation of the scope of the arbitration clause—which conflicts with the plain language of the contract—does not afford grounds to avoid arbitration of these disputes.

## ARGUMENT

### A. Plaintiffs Agreed To Have An Arbitrator Decide the Gateway Questions Concerning Arbitrability.

Parties may include in a contract an "agree[ment] to arbitrate 'gateway' questions of 'arbitrability' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). This agreement "is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce." *Id*. at 69. Thus, "[t]he question of *who* is to decide whether a dispute is arbitrable is one that must necessarily precede the question of *whether* a dispute is arbitrable." *VRG Linhas Aereas S.A. v. MatlinPatterson Glob. Opportunities Partners II L.P.*, 717 F.3d 322, 324 (2d Cir. 2013) (cited approvingly in *Belnap*, 844 F.3d at 1272); *see also Peabody Holding Co. v. United Mine Workers of Am., Int'l Union,* 665 F.3d 96, 101 (4th Cir. 2012) ("First, we determine *who* decides whether a particular dispute is arbitrable: the arbitrator or the court. Second, if we conclude that the court is the proper forum in which to adjudicate arbitrability, we then decide *whether* the dispute is, in fact, arbitrable.") (cited approvingly in *Belnap,* 844 F.3d at 1272). The Tenth Circuit recently confirmed its agreement with "the First, Second, Fourth, Eighth, Ninth, Eleventh, and D.C. Circuits [which] have all held that if a court finds evidence of clear and unmistakable intent to arbitrate arbitrability, it must allow an

4

arbitrator to decide issues of arbitrability in the first instance." *Belnap v. Iasis Healthcare*, 844 F.3d 1272 (10th Cir. 2017).  Here, because the arbitration provisions in Plaintiffs' agreements "clearly and unmistakably" provide for an arbitrator to address questions of arbitrability, the Court must honor those agreements.  *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986).  Plaintiffs have failed to even attempt to address this threshold issue raised in Wells Fargo's moving papers.  (*See* Mot. at 8-11.)

> **1.    Incorporation of the AAA Rules Clearly and Unmistakably Delegates the Arbitrability Issue.**

All versions of the arbitration agreement at issue incorporate the AAA Commercial Arbitration Rules; Rule 7(a) of those rules delegates the scope and enforceability questions to the arbitrator.  (Nelson Decl., ¶¶ 8-21, Ex. 1-A at 6-7, Exs. 1-B, 1-C, 1-D, 1-E at 9, Exs. 1-F, 1-G, 1-H at 5, Exs. 1-I, 1-J, 1-K, 1-L at 4, Exs. 1-M and 1-N at 3; *id.* ¶¶ 23-25, Ex. 2-A at 2-3, Exs. 2-B and 2-C at 3.)  "[B]y incorporating the AAA Rules and agreeing to be bound by these rules, the parties 'clearly and unmistakably' evidenced their intent to arbitrate all matters, including the question of arbitrability."  *Getzelman v. Trustwave Holdings, Inc.*, 2014 WL 3809736, at *3 (D. Colo. Aug. 1, 2014).  The Tenth Circuit recently considered this issue in holding that parties clearly and unmistakably agree to have an arbitrator resolve questions of arbitrability by incorporating the JAMS arbitration rules, noting that "in an analogous context, all of our sister circuits to address the issue have unanimously concluded that incorporation of the substantively identical (as relevant here) AAA Rules constitutes clear and unmistakable evidence of an agreement to arbitrate arbitrability."  *Belnap*, 844 F.3d at 1272.

### 2. The Language of the Arbitration Clauses Unambiguously Delegates the Arbitrability Issue to the Arbitrator.

Even apart from the incorporation of the AAA Rules, the applicable arbitration provisions state plainly that the arbitrator will decide questions of arbitrability. The Consumer Account Agreements and credit card agreements provide that "disputes" will be arbitrated and states that disputes "include disagreements about the meaning, application or enforceability of this arbitration agreement." (Nelson Decl. ¶¶ 16-21, Exs. 1-I through 1-L at 4; *id*. ¶ 62, Ex. 16-A ("A Dispute also includes any disagreements about the meaning or application of this Arbitration Agreement.").) The agreements also make clear that "[t]he arbitrator shall decide any dispute regarding the enforceability of this arbitration agreement." (*Id.*) The language used for business accounts in the Business Account Agreements and Online Account Agreements likewise delegate questions of arbitrability to the arbitrator: "The arbitrator(s) will determine whether or not an issue is arbitratable." (Nelson Decl., ¶¶ 23-25, Ex. 2-A at 3, Exs. 2-B and 2-C at 5; *id.* ¶ 65, Ex. 17-B (disputes subject to arbitration include "interpretation of this Agreement (including the meaning of this arbitration agreement and whether a disagreement is a 'dispute' subject to binding arbitration as provided for in this arbitration agreement.)"). Plaintiffs notably do not dispute that both the incorporation of the AAA Rules and the straightforward language of the delegation provisions vested with the arbitrator the authority to decide the questions as to scope and enforceability that they have raised with the Court.

### B. Plaintiffs Agreed To Arbitrate This Dispute.

Even if this Court were to reach the arbitrability question—which it should not, because that question has been reserved for the arbitrator—the claims at issue here are covered by the arbitration agreement.

Plaintiffs argue that "the arbitration clause extended solely to the intended scope of the agreement entered into between the parties, *to wit,* if there were disputes as to banking issues . . . [then] arbitration could be expected . . . ." (Opp. at iii-iv.)  But "where, as here, parties concede that they have agreed to arbitrate *some* matters pursuant to an arbitration clause, the law's permissive policies in respect to arbitration counsel that any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration."  *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 298 (2010) (internal quotation marks omitted, emphasis in original). "This presumption in favor of arbitrability also applies where a party bound by an arbitration agreement raises claims founded on statutory rights." *Armijo v. Prudential Ins. Co. of Am.,* 72 F.3d 793, 797 (10th Cir. 1995).  Put simply, "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *United Steelworkers of Am. v. Warrior & Gulf Navigation Co*., 363 U.S. 574, 582-83 (1960) (emphasis added).

Plaintiffs acknowledge that their agreements with Wells Fargo contain "a very broad arbitration clause."  (Opp. at v.)  For instance, the Consumer Account Agreements state that "[i]f you have a dispute with the Bank, and you are not able to resolve the dispute informally, you and the Bank agree that upon demand by either you or the Bank, the dispute will be resolved through

the arbitration process as set forth in this part."[3]  "A 'dispute' is any unresolved disagreement between you and the Bank,"[4] and "includes claims based on broken promises or contracts, torts, or other wrongful actions" as well as "statutory, common law, and equitable claims."[5]  The arbitration clause "contains no limiting language, either restricting arbitration to any specific disputes or to the agreement itself." *Sanchez v. Nitro-Lift Techs., L.L.C.*, 762 F.3d 1139, 1146 (10th Cir. 2014) ("we have not found any case with an arbitration clause as broad as this, stating that '*[a]ny dispute, difference or unresolved question* between' the parties must be arbitrated"). As the Tenth Circuit has explained, the presumption in favor of arbitrability "is particularly applicable where, as in the case before us now, there is a broad arbitration clause.  In such cases, in the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Local 5–857 Paper, Allied–Indus., Chem. & Energy Workers Int'l Union v. Conoco, Inc.*, 320 F.3d 1123, 1126 (10th Cir. 2003).  The arbitration clauses here do not contain any carve outs—they apply across the board to disputes between the customer and the Bank.

Plaintiffs instead attempt to gin up an ambiguity as to what "any dispute" means by claiming that, "[w]hile the word 'any' is a broad word, if it was intended to cover these kinds of actions, it should have been clearly and unambiguously stated that civil remedies for criminal

---

[3] Nelson Decl. ¶¶ 16-19, Exs. 1-I, 1-J, 1-K, and 1-L at 4; *cf. id*. ¶¶ 8-12, Exs. 1-A, 1-B, 1-C, 1-D and 1-E at 8; *id.* ¶¶ 13-15, Exs. 1-F, 1-G, and 1-H at 4 (nearly identical language); *see also id.* ¶¶ 20-21, Exs. 1-M and 1-N at 3.  Plaintiffs' assertion that, by voluntarily refunding fees to customers "[i]n lieu of opening thousands, if not millions, of arbitrations to refund fees" Wells Fargo has waived the right to arbitrate Plaintiffs' claims in this case is inane, (Opp. at 32), and also fails to appreciate the parties' ability to "resolve the dispute informally" without resort to arbitration.

[4] *See, e.g., id.* ¶ 8, Ex. 1-A at 6.

[5] *See, e.g., id.* ¶ 16, Ex. 1-I at 4.

8

actions by the bank must be arbitrated." (Opp. at 26.) Plaintiffs have it backwards—the fact that the arbitration provisions did not clearly exclude such civil remedies from "any disputes" which must be arbitrated means that they are covered by the arbitration agreement. And, in any event, Plaintiffs' argument confirms that their claims belong in arbitration: "to acknowledge the ambiguity is to resolve the issue, because all ambiguities must be resolved *in favor* of arbitrability." *Armijo*, 72 F.3d at 798.

Nor is there any traction to Plaintiffs' argument that their arbitration agreements do not reach claims associated with alleged unauthorized accounts. Plaintiffs' allegations are necessarily tied to the accounts they acknowledge are valid, as they assert that Wells Fargo converted funds they deposited into their authorized accounts, misused information they provided in connection with opening their authorized accounts, and failed adequately to safeguard that information. (Second Amended Complaint ¶¶ 107, 112, 115, 199, 206.) *See Jabbari* (ECF No. 24-1) at 2 ("The misuse of information and funds associated with their accounts may 'relate' to the legitimate accounts …."). Plaintiffs' breach of contract claim premised on an alleged failure "to implement sufficient security measures to protect Plaintiffs' and the Class Members' private and confidential information" as promised is, by definition, connected to the agreements for Plaintiffs' authorized accounts which they concede are enforceable. (Second Amended Complaint ¶ 146.)[6]

---

[6] In a startling misrepresentation of Supreme Court precedent, Plaintiffs assert in their opposition brief that "[t]he Justices in *Dean Witter* [*Reynolds, Inc. v. Byrd,* 470 U.S. 213 (1985)] enunciated that '[w]hen arbitrable and nonarbitrable claims arise out of the same transaction, and are sufficiently intertwined factually and legally, the district court, under this view, may in its discretion deny arbitration as to the arbitrable claims and try all the claims together in federal court.' *Id.* at 217." (Opp. at 2.) Plaintiffs conclude that, notwithstanding that some of their claims asserted in this case "could fall within arbitrable claims," "all claims should be tried

9

Whether the conduct underlying certain of Plaintiffs' claims would constitute a crime does not affect the determination whether Plaintiffs' *civil claims* must be compelled to arbitration under the account agreements. In *Grynberg v. BP P.L.C.*, 585 F. Supp. 2d 50 (D.D.C. 2008), for instance, the plaintiffs argued that their claims against oil companies and executives under RICO fell outside the scope of an arbitration clause because "criminal acts—bribery in violation of the Foreign Corrupt Practices Act—form the predicate acts necessary for their RICO claim." *Id.* at 53. The court rejected the argument, noting that the agreement referred any dispute relating in any way to the agreement to arbitration, and that the civil claims asserted by the plaintiffs must be distinguished from the underlying alleged criminal conduct: "this is a RICO action and RICO actions are arbitrable." *Id*. at 54; *see also Pickens v. ITT Educ. Servs., Inc.*, 2012 WL 5198332, at *2 (S.D. Tex. Oct. 19, 2012) (compelling arbitration of student's civil negligence claims against school premised on allegations of criminal assault and battery); *Mohebbi v. Khazen*, 2014 WL 6845477, at *8-9 (N.D. Cal. Dec. 14, 2014) (investment agreement's arbitration clause extended to RICO claims and numerous intentional torts). The same is true here. Regardless of how Plaintiffs characterize the underlying conduct, the causes of action they have asserted in this case are civil claims which are encompassed by the arbitration agreement. Private arbitration agreements do not bar *the government* from pursuing criminal charges, but that is not the issue in this private action. (*Cf.* Opp. at 11-12 (incorrectly positing that, in the event of a robbery, the arbitration agreement would prevent police involvement).)

---

together in federal court, per *Dean Witter*." (Opp. at 2.) The quote which Plaintiffs have plucked from the *Dean Witter* decision is the summation of a doctrine which the Court proceeded to roundly reject. *Dean Witter* made clear "the Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." 470 U.S. at 217.

### C. Plaintiffs' Arbitration Agreements Are Not Unconscionable or Illegal, Nor Does Plaintiffs' Subjective Misinterpretation of the Scope of Arbitration Provide Grounds to Rescind.

"A party claiming unconscionability bears a heavy burden." *Ryan v. Dan's Food Stores, Inc.*, 972 P.2d 395, 402 (Utah 1998). "Even if a contract term is unreasonable or more advantageous to one party, the contract, without more, is not unconscionable." *Id.* Plaintiffs' procedural unconscionability arguments fall flat, given that they concede the arbitration clause is enforceable at least as to claims that they deem to be "generally associated with bank accounts," (Opp. at 11), and explain that their position "has nothing to do with notice of the arbitration clause, or whether or not each Plaintiff signed the CAA." (Opp. at ii.) Plaintiffs had an opportunity to read the arbitration language which was prominently featured on both their account applications above the signature line and in the first section of their account agreements, and they were free to opt for an account with a different bank. There is no procedural unconscionability here. *See, e.g., Ryan*, 972 P.2d at 403-04 (form at-will employment contract with employer not procedurally unconscionable notwithstanding lack of opportunity to negotiate, fact that contract drafted by employer, and employee would need to find other employment if he did not sign).

Plaintiffs' substantive unconscionability arguments are based on the scope of the arbitration provision *if* it is deemed to apply to claims which are allegedly premised on illegal conduct. (*See* Opp. at 14 ("the context and performance of the signed banking agreements give no indication that illegal activities would be included as 'any dispute' within the arbitration agreement.").) Plaintiffs' argument finds no support in case law. On the contrary, courts routinely enforce arbitration agreements as to civil claims premised on allegedly illegal conduct.

11

*See supra* at 10. Indeed, courts have rejected Plaintiffs' argument that a broad arbitration provision is substantively unconscionable because it covers claims arising from illegal conduct. *See Montgomery v. Applied Bank*, 848 F. Supp. 2d 609, 617 (S.D.W. Va. 2012) (arbitration clause in credit card agreement not procedurally or substantively unconscionable, rejecting argument based on allegation that "the clause sweeps in subsequent criminal activity that [plaintiff] could not have possibly or reasonably anticipated being a part of the original agreement."); *Monex Deposit Co. v. Gilliam*, 671 F. Supp. 2d 1137, 1143 (C.D. Cal. 2009) (investor account agreement not procedurally or substantively unconscionable).

Though Plaintiffs assert "illegality" as grounds to void the arbitration agreement, they conflate the notion of the alleged illegal nature of the conduct underlying their claims with the legality of the contract itself. There is nothing illegal about the arbitration clause in the parties' agreements. Nor do Plaintiffs contend that enforcement of the arbitration clause would cause them to violate a penal statute, as required to avoid arbitration on the basis of illegality. *Peterson v. Sunrider Corp.*, 48 P.3d 918, 931 (Utah 2002) ("although a contract is not automatically unenforceable merely because it is in violation of statute, such a contract must be held unenforceable if enforcement would compel the party seeking to avoid the contract to violate a penal statute") (internal brackets, quotation marks, citations omitted).

Assertions that Plaintiffs did not understand the scope of the arbitration agreement, and that the agreement therefore should be declared void on the basis of Plaintiffs' mistake, or purported misrepresentation or fraudulent inducement by Wells Fargo, are also non-starters. The crux of Plaintiffs' argument is that Wells Fargo had a duty to explain the scope of the arbitration clause to Plaintiffs. Yet Plaintiffs provide no support for this proposition, which runs counter to

12

the foundational contract principle that "one party to an agreement does not have a duty to ensure that the other party has a complete and accurate understanding of all terms embodied in a written contract. Rather, each party has the burden to read and understand the terms of a contract before he or she affixes his or her signature to it." *John Call Eng'g, Inc. v. Manti City Corp.*, 743 P.2d 1205, 1207–08 (Utah 1987). Plaintiffs can provide no evidence of an affirmative misrepresentation by Wells Fargo as to the scope of the arbitration provision, given that the language of the parties' agreement expressly provided, in the broadest terms, that *any* dispute was subject to arbitration. And Plaintiffs' subjective misinterpretation of the scope of the arbitration clause does not provide grounds to rescind the contract, even if this issue were properly before the Court. "[I]n the interest of preserving some reasonable stability in commercial transactions, the courts will not set aside contractual obligations, particularly where they are embodied in written contracts, merely because one of the parties claims to have been ignorant of, or to have misunderstood, the provisions of the contract." *Hedging Concepts, Inc. v. First Alliance Mortg. Co*., 41 Cal. App. 4th 1410, 1421 (1996).

D. **Arbitration Does Not Effect a Waiver of Plaintiffs' Federal Statutory Rights.**

Plaintiffs urge the Court to refrain from enforcing their arbitration agreements because "plaintiffs are at risk of being unable to vindicate their rights under federal statute" if they are forced to arbitrate on an individual basis, arguing that "the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum." (Opp. at 29, 28 (quoting *Green Tree Fin. Corp.-Ala. v. Randolph,* 532 U.S. 79, 90 (2000).) Plaintiffs' argument fails to recognize that there is no "entitlement to class proceedings for the vindication of statutory rights." *Am. Express Co. v. Italian Colors Rest.*, 133

S. Ct. 2304, 2309 (2013). The Supreme Court has clarified that a judge-made exception to the FAA could theoretically apply to "arbitration agreements that operate . . . as a prospective waiver of a party's *right to pursue* statutory remedies," but the Court has time and again "declined to apply it to invalidate the arbitration agreement at issue." *Id.* at 2310 (emphasis in original; brackets, internal quotation marks omitted). The paradigm of a prohibited waiver of a party's *right to pursue* statutory remedies is "a provision in an arbitration agreement forbidding the assertion of certain statutory rights"—not a concern with the arbitration agreements here. *Id.*

On the issue of whether arbitration costs could trigger the exception, the Court pointedly observed that "the fact that it is not worth the expense involved in *proving* a statutory remedy does not constitute the elimination of the *right to pursue* that remedy." *Id.* at 2311 (emphasis in original). While the Court allowed the possibility that the exception "would perhaps cover filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable," *id.* at 2310-11, Plaintiffs do not make a showing of the costs involved in arbitration, and instead focus on the number of separate, individual arbitrations that would result if Plaintiffs' claims are compelled to arbitration.[7] But the Supreme Court has already rejected the argument that a class vehicle—whether in court or in arbitration—is necessary to prosecute claims that "might otherwise slip through the legal system," noting that a "class-action waiver

---

[7] "[W]here [a] party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Green Tree*, 531 U.S. at 92. Thus, the party opposing arbitration "must provide some individualized evidence that it likely will face prohibitive costs in the arbitration at issue and that it is financially incapable of meeting those costs," and the "bare assertion of prohibitive costs, without more, is too speculative and insufficient to shift the burden to [defendants] to show how the costs are not prohibitive." *Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 557 (7th Cir. 2003).

merely limits arbitration to the two contracting parties" and "the individual suit that was considered adequate to assure 'effective vindication' of a federal right before adoption of class-action procedures did not suddenly become 'ineffective vindication' upon their adoption." *Id.* at 2311-12. Plaintiffs' assertion that the arbitration agreement operates as a waiver of their federal statutory rights is meritless.[8]


Dated: January 27, 2017               MUNGER, TOLLES & OLSON LLP


                                      */s/ Erin J. Cox*
                                      Erin J. Cox

                                      David H. Fry
                                      Eric P. Tuttle

                                      RAY QUINNEY & NEBEKER P.C.
                                      James S. Jardine
                                      Elaina M. Maragakis
                                      Michael D. Mayfield

                                      *Attorneys for Defendants Wells Fargo Bank, N.A. and Wells Fargo & Co.*

---

[8] For a similar reason, the alleged illegality of the conduct underlying Plaintiffs' claims "is entirely irrelevant from a public policy perspective: the arbitration clause does not prevent [plaintiffs] from obtaining a remedy for [a defendant's alleged] criminal conduct—it merely specifies the forum in which that relief takes place." *Deputy v. Lehman Bros.*, 345 F.3d 494, 513 (7th Cir. 2003).