EXHIBIT D



# Order

| Client | Zane Christensen |
| --- | --- |
| Order # | TC0940653159 |

How did we do?

☆☆☆☆☆

If you rate this transcript 3 or below, this agent will not work on your future orders

Need Help? mailto:support@rev.com
Get this transcript with table formatting

| | |
|---|---|
| Mr. Chairman: | [inaudible 00:00:00]. Thank you, Senator Tester. |
| Senator Tester: | Thank you, Mr. Chairman, and thank you for being here today, uh, Mr. Sloan. Um, let me, let me, let me just go through what we've learned over the last, uh, year. In September of 2016 we learned that 2.1 million Wells Fargo accounts had been fraudulently sent up, fraudulently set up, um, credit, checking, debit, unauthorized setting up. July 7th of 2017 we learned that Wells Fargo set up 800,000 auto insurance policies who didn't want or didn't need them, and then in August of 2017 we learned an additional 1.8 million, that's over and above the 2.1 million, 1.4 million accounts were set up for unknowing customers. If you add all those up, that brings the accounts to 4.3 million people, uh, either fraudulent accounts or insurance companies, if my math is correct, it is correct. Um, 4.3 million people, by the way, is over four times the population of the state of Montana. It's a pretty good sized chunk of folks. Um, does, the, the Chairman ranking member this, ranking member of this committee, s-s- in their open statements, basically asked you, what have you done that you can tell us today- |
| Timothy Sloan: | Mm-hmm (affirmative). |
| Senator Tester: | That has this culture. This isn't one person, this isn't tellers on the ground, this has been a culture. So what can you tell me, concisely, that you've done, and I know you've talked about, um, you know, transforming your community banks, but what as CEO have you done, or the board or whatever to ensure to us that we're not going to be back here next week, or a month from a now, or a year from now talking about something else? |
| Timothy Sloan: | Um, Senator, I can't promise you, uh, perfection, but I can promise you that we're working as hard as we can to get to near perfection, and that is we're, we're reviewing processes and procedures, turning over every stone. But first and foremost, what we had to do and what you, you, um, criticized f- us for last year, and you were absolutely right, is we had to have an executive team that took full responsibility for that, that was number one. Number two, we needed to reinforce that with our team, so we, we went out and we talked to our team, and we asked them what they were concerned about. They were concerned about things like pay, they were concerned about things like escalation of issues, they were concerned about things like ex- executive accountability, they were concerned about things like revamping our, uh, uh, our, uh, equity lines and things like that, wh- our ethics lines, excuse me. The point is, we've listened to our team, and as you're listening to the team, that fundamentally changes the culture. |
| Senator Tester: | Okay. |

| | |
|---|---|
| Timothy Sloan: | And, and Senator, the proof of the pudding there is that our turn over is now down to its lowest level in four and a half years, and in particular, it's down to its lowest level in our community bank where we had our biggest issues. |
| Senator Tester: | Okay. So, uh, just, just to let you know, I hope this all works, because I think it's absolutely essential that it works. Uh, uh, if, if, if we're doing this again, six months from now, it's not going to be good. You talked about the things you've done, reviewing the customers and products, improving training, resolving problems, um, uh, talked about a nationwide mediat- mediator. Who pays for the nationwide mediator? |
| Timothy Sloan: | Oh, we do. |
| Senator Tester: | Who chooses him? |
| Timothy Sloan: | Uh, the, the customer does. It's, they're ind- we just go to an independent mediation service and the customer can do [crosstalk 00:03:29]. |
| Senator Tester: | The customer's the one who makes the call unto the mediator? |
| Timothy Sloan: | Yeah, yeah. I mean, we provide them with a list of names, they can decide who they want to use- |
| Senator Tester: | Okay. |
| Timothy Sloan: | And we'll pay for it. |
| Senator Tester: | Okay. Let me talk a little bit about what the ranking member talked about, and that's forced arbitration. Is it true that you're using forced arbitration when it applies to a real account on fake accounts? |
| Timothy Sloan: | Uh, Senator, we've, we've dealt with that sit- issue with, with the 142 million dollar settlement. We didn't waive our right to arbitration there, but what we did is we agreed to that settlement, and we said to our customers, "Come in to see us." We will make it right by them- |
| Senator Tester: | [crosstalk 00:04:05]. |
| Timothy Sloan: | And if you're not happy we'll provide you with a mediator. |
| Senator Tester: | Yeah, but that wasn't the question. The question is, is were you using, um, forced arbitration from a real account and applying it to a fake account that was set up unauthorized? |
| Timothy Sloan: | There, there were instances, historically, that we did. |
| Senator Tester: | Is that happening today? |

Senator Tester                                                                                                        Page 3 of 5

| | |
|---|---|
| Timothy Sloan: | We're not doing that right ... We're not doing that today, because we've addressed- |
| Senator Tester: | Well, will you commit- |
| Timothy Sloan: | Yeah. |
| Senator Tester: | To not use forced arbitration on accounts that weren't set up without the authorization of, of the, of the customer? |
| Timothy Sloan: | Senator, if, if we find, if, if there's a situation in which a customer is provide- |
| Senator Tester: | Yes or no would work. |
| Timothy Sloan: | Uh, yes. |
| Senator Tester: | You commit not to use that, forced arbitration. |
| Timothy Sloan: | Uh, if, if we have, if we have set up an account, all right, that was inappropriately set up- |
| Senator Tester: | Yep. |
| Timothy Sloan: | Or fraudulently set up- |
| Senator Tester: | Yep. Yep. |
| Timothy Sloan: | Without the customer- |
| Senator Tester: | Yep. |
| Timothy Sloan: | We're going to make it right by them. We're not- |
| Senator Tester: | And you're not going to forced arbitration? |
| Timothy Sloan: | There's not, there's not going to be a reason to even have the conversation, because we're going to make it right by that customer. |
| Senator Tester: | But Tim, let me point out that, that, that was being used, uh, um, six months ago, and I think my staff whispered in my ear that this, they were using arbitration on fake accounts that was set up on real accounts. |
| Timothy Sloan: | Senator Tester, I completely appreciate your question, and we're not doing that, because, we- |
| Senator Tester: | Okay. And you're not going to do that? |

| | |
|---|---|
| Timothy Sloan: | We, we, if, if we have set up an account- |
| Senator Tester: | Okay, Tim, the only time I get in fights with folks who are talking is when they don't give me a yes or no answer when I really ask it, and the question is this, and you can ask it another way, answer it in another way if you want, but, uh, are you, will you commit to not use forced arbitration on accounts that were not authorized by the customer? |
| Timothy Sloan: | The, the easy answer for that, uh, Senator, is yes, because we haven't done that. |
| Senator Tester: | Okay. |
| Timothy Sloan: | We're, we are not doing that. |
| Senator Tester: | And you're not going to do it moving forward? |
| Timothy Sloan: | We're not doing that. |
| Senator Tester: | Okay. Thank, thank you very much. I used more time than I should of. Thank you, Mr. Chairman. |

How did we do?



If you rate this transcript 3 or below, this agent will not work on your future orders



# Order

| Client | Zane Christensen |
|---|---|
| Order # | TC0940653159 |

How did we do?

☆☆☆☆☆

If you rate this transcript 3 or below, this agent will not work on your future orders

Need Help? mailto:support@rev.com
Get this transcript with table formatting

| | |
|---|---|
| Speaker 1: | Senator Van Hollen. |
| Van Hollen: | I was listening to your response to Senator Tester about the issue of, uh, forced arbitration. Simple question ... |
| Timothy Sloan: | Mhm. |
| Van Hollen: | Uh, wh- who knows best what's in a customer's interest, Wells Fargo, or your customer? |
| Timothy Sloan: | Uh, I think that, i- uh, it frequently is the customer, and that's why ... |
| Van Hollen: | Ri- |
| Timothy Sloan: | And that's why it's very important from my perspective to get it right, so that we don't get in a point ... |
| Van Hollen: | But, but, if your customer knows best, why do you deny them the ability to go to court? Why do you require your customers, if they know best, to go to mandatory arbitration? |
| Timothy Sloan: | Senator, we don't do that for all of our products and services, we only do that ... |
| Van Hollen: | Yeah, but why do you do it for some of them if your customer knows best? |
| Timothy Sloan: | But, well again, I think, I think many ... |
| Van Hollen: | It's a simple question. If your customer knows best, why do you deny them the opportunity to go to court? Why do you require arbitration? |
| Timothy Sloan: | Because, Senator, most of the independent studies, including the one that was done by the CFPB two years ago, indicate that it's better ... |
| Van Hollen: | But if a customer ... Lis- |
| Timothy Sloan: | ... that it's better for the customer ... |
| Van Hollen: | If- Mr. Chairman, if the customer makes the decis- A customer brings the case, right? Right? |
| Timothy Sloan: | Yes. |
| Van Hollen: | So if a customer decides it's in his or her best interests, forget about the studies. We also know what the, what the s- Consumer Financial Protect- what they recommended. They recommended that we get rid of forced arbitration. You |

|  |  |
|---|---|
|  | said to Senator Tester that you were not applying forced arbitration with respect to the fake accounts. Remember that answer? |
| Timothy Sloan: | Yes, I did. |
| Van Hollen: | Are yo- There's an article here, uh, S- Monday, September 18th, 2017, just a short time ago. In a case in Utah, uh, Wells Fargo lawyers have actually taken the position that the forced arbitration does apply to those fake accounts. Are you aware of that case? |
| Timothy Sloan: | Uh, I'm not familiar with that case, Senator. I apologize. |
| Van Hollen: | Well, let me, let me read to you from, uh, a Reuters excerpt and they reported, uh, this in September 18th, 2017. It says, "In a motion on Monday, lawyers for Wells Fargo said consumers signed agreements to arbitrate disputes when they first opened their accounts at the bank, and those agreements also cover other accounts allegedly opened without their consent." That directly contradicts your testimony to Senator Tester, doesn't it? |
| Timothy Sloan: | Senator, uh, I'll have- uh, I will look into that matter- |
| Van Hollen: | If that is true- |
| Timothy Sloan: | Senator, I will look into that matter and I will respond. |
| Van Hollen: | If that is true, it directly contradicts your testimony to this committee, doesn't it? |
| Timothy Sloan: | Senator, I will look into that matter- |
| Van Hollen: | I'm not asking you to look into it. I'm asking you to say if that's true, doesn't that contradict your testimony today? |
| Timothy Sloan: | Senator, I'm not familiar with the, the, the facts of the situation, so I can't answer that question, but I'd be happy to look into it and respond to you. |
| Van Hollen: | Well, if it's true it violates- it's in contradicts- uh, I don't know if you were sworn in today or not, but it violates your, your earlier testimony. Let me ask you about your other, your other, uh, overdraft fees scandal. In that- in- when it comes to overdrafts fees scandals you are still exercising your rights to deny, uh, customers the right to go to court. Your- In other words, you're enforcing the arbitrat- arbitration agreement. Is that- |
| Timothy Sloan: | Senator, I'm not, I'm not familiar with the, the overdraft scandal that you're referring to. |

| | |
|---|---|
| Van Hollen: | The overdraft fees, where you were charging ... you were not ... where you were charging customers fees on overdrafts ... |
| Timothy Sloan: | We- we- we- |
| Van Hollen: | ... of fake accounts? |
| Timothy Sloan: | S- S- S- Senator, we- we- we, uh, we don't, uh, I mean we charge, uh, customers fees when they are- overdrew- draw their accounts, but I'm not familiar with an overdraft scandal. Uh, if it relates to any, uh, unauthorized accounts, that will, potentially unauthorized accounts, that could have part of that 3.5 million, to the extent that there was any fees charged, we've already reimbursed those to the customers, so they've been made whole. |
| Van Hollen: | Well, apparently you're- in, uh, in a, in a case in the 11th Circuit Court of Appeals, you're- uh, we'll, we'll follow up with you, but it looks like ... |
| Timothy Sloan: | Please. |
| Van Hollen: | Also ... Actually, how about the, um, the practice where you were selling, uh, auto insurance, right, to people who didn't ask for it or didn't want it? |
| Timothy Sloan: | [Crosstalk 04:13] |
| Van Hollen: | There was- That was a situation, I think about 500 Marylanders or more, actually about 10,000 Marylanders were affected by that. 500 had their cars repossessed. It was actually the subject of a NPR radio story. Did you have a chance to hear that radio story? |
| Timothy Sloan: | I didn't, Senator. I- I listen to NPR, but I didn't hear that. |
| Van Hollen: | I- I would encourage you, uh, to do that, uh, because one of my constituents, uh, came out to go to work one morning, uh, his name was Michael Pfeiffer. He was heading out in February to his job in Maryland at a company that builds guitars. He walked to the place where he'd parked his car. It wasn't there. He called the police, said he was livid. Said he thought someone stole his car. Turns out it wasn't a car thief at all. It was Wells Fargo repossessors. He was fabberglasted f- be- because his insurance was, was current.<br><br>Um, he went to Wells Fargo. The folks at the local, the local branch said, you know, "This is nuts. You're covered." It took them, the employees of Well Fargo, over two and a half hours, just to connect to folks in another branch. My question is very simple. If, if it takes the employees of Well Fargo two and a half- Wells Fargo two and a half hours to get in touch with others, it takes individuals having to fight the system by themselves, don't you understand why it makes sense for people to be able to band together to file their claims against a big company like yours, rather than have to fight you one by one? |

| | |
|---|---|
| Timothy Sloan: | Uh, Senator, what, what I understand is that if we make a mistake, we need to make it right ad we've got to improve our processes. What I'd like is, to the extent that, uh, Mr. Pfeiffer has not been made whole by us, I'd like to speak with him personally to make sure that we're handling the situation to his satisfaction if we made a mistake. |
| Van Hollen: | Well, Mr. Chairman, I- I would just point out that you said it yourself. You were informing your customers to know about class action settlements so they can be made whole. That is the way, uh, lots of people can be whole- he- whol- you know, made whole at once. Uh, Mr. Pfeiffer is like one guy, fighting Wells Fargo. Um, I- I- I fi- I find it amazing that you would say your customers come first and then you deny them the choice of how they seek their compensation and how they seek justice. Thank you, Mr. Chairman. |
| Speaker 1: | Senator Purdue. |

How did we do?



If you rate this transcript 3 or below, this agent will not work on your future orders